# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                      CHAPTER 7

**JOSEPH SAVAN GATLIN, III**                    **CASE NO. 1201647EE**

**STATE FARM MUTUAL AUTOMOBILE**        **ADVERSARY NO. 1200075EE**
**INSURANCE CO.; STATE FARM FIRE**
**& CASUALTY CO.**

**V.**

**JOSEPH SAVAN GATLIN, III**

Hon. Christopher D. Morris                  Attorney for State Farm Mutual Automobile
P. O. Box 750                                 Insurance Company and State Farm Fire &
Jackson, MS 39205-0750                                       Casualty Company

Hon. Eileen N. Shaffer                              Attorney for the Debtor
P. O. Box 1177
Jackson, MS 39215-1177

Edward Ellington, Judge

## MEMORANDUM OPINION ON *STATE FARM'S MOTION FOR SUMMARY JUDGMENT*

**THIS MATTER** came before the Court on *State Farm's Motion for Summary Judgment* (#8) (Summary Judgment Motion) filed by State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (collectively, State Farm) and *Joseph Savan Gatlin, III's Response to State Farm's Motion for Summary Judgment* (#14). Having considered

same and the respective briefs, the Court finds that the Summary Judgment Motion should be granted.

## FACTS

Not all of the following facts are material to the Summary Judgment Motion currently before the Court. Some of these facts are listed to provide an understanding of the events that led up to the judgment State Farm asks the Court to declare nondischargeable:

In 2000, a car accident occurred in Jackson, Mississippi. Joel S. Gatlin A.K.A. Joseph Savan Gatlin, III, an attorney, was hired by one of the parties involved in the accident to file suit against Moderia Wilson (Wilson), the driver of the other vehicle. In August of 2002, Mr. Gatlin filed a complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi (No. 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) (Hinds County Litigation). The only defendant in the original complaint was the driver of the other vehicle, Wilson. The case was randomly assigned to Circuit Judge Winston L. Kidd.

Wilson failed to respond to the complaint. On October 14, 2002, the circuit clerk entered a *Docket of Entry of Default*[1] against Wilson. On November 12, 2002, Judge Kidd held a hearing on an application for a default judgment and ruled from the bench that he would grant a default judgment against Wilson.

Three days after the hearing on the application for default judgment, but prior to the entry of the actual default judgment, Mr. Gatlin filed a *First Amended Complaint*[2] (Amended Complaint) on November 15, 2002. Significantly, Mr. Gatlin filed this Amended Complaint under the same cause

---

[1] *State Farm's Motion for Summary Judgment*, Exhibit B, *Docket of Entry of Default* (#8-2), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[2] *State Farm's Motion for Summary Judgment*, Exhibit D, *Default* (#8-4), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

number as the matter previously ruled upon by Judge Kidd.  In the Amended Complaint, Mr. Gatlin again named Wilson as a defendant even though a final default judgment had already been granted from the bench.  Also, Mr. Gatlin added as defendants:  Robin Hall,[3] State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company and John Does 1 - 5.  The Amended Complaint, which arose out of the same car accident, sought uninsured motorist benefits from State Farm and added a bad faith cause of action against State Farm.  As discussed later, there is a dispute as to whether Mr. Gatlin properly served a copy of the Amended Complaint on State Farm.

On November 20, 2002, a *Default Judgment*[4] (1st Default) was signed by Judge Kidd against Wilson in the  amount of $150,000.00.  The 1st Default memorialized Judge Kidd's verbal ruling at the hearing on November 12, 2002.

On January 8, 2003, Mr. Gatlin filed an *Application to Clerk for Entry of Default and Supporting Affidavit* in which he sought a default judgment against State Farm.  Also on January 8, 2003, a *Docket of Entry of Default*[5] (2nd Default) was entered against State Farm.[6]

After the entry of the 2nd Default, State Farm entered the case.  Over the next several years, a flurry of pleadings were filed by both State Farm and Mr. Gatlin in two circuit courts and in the Supreme Court of Mississippi.

---

[3]Ms. Hall was an employee of State Farm.

[4]*State Farm's Motion for Summary Judgment*, Exhibit E, *Default Judgment* (#8-5), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[5]*State Farm's Motion for Summary Judgment*, Exhibit F, *Application to Clerk for Entry of Default and Supporting Affidavit* (#8-6), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[6]Although there are other defendants listed in the Amended Complaint, these defendants are not mentioned in the 2nd Default.

In December of 2006, State Farm filed a *Petition for Writ of Mandamus and For Stay*[7] (Petition) with the Supreme Court of the State of Mississippi.  In its Petition, State Farm alleged that by filing the Amended Complaint after the evidence had been submitted to the finder of fact and the judge had issued a verbal ruling, Mr. Gatlin violated Mississippi Rule of Civil Procedure 15, which governs the amendment of pleadings.  Further, State Farm alleged that Mr. Gatlin filed the Amended Complaint to manipulate the random assignment of judges which violated Rule 1.05A of the *Uniform Circuit and County Court Rules* (UCCCR).

On February 7, 2007, the supreme court issued its Writ.  The court order that "the amended complaint shall be severed and returned to the clerk of the trial court for random assignment pursuant to UCCCR 1.05A."[8]

Pursuant to the order of the supreme court, the Amended Complaint was severed and docketed as a separate matter under a new case number (No. 251-07-135CIV).  It was randomly assigned to Circuit Court Judge W. Swan Yerger.  On November 27, 2007, State Farm filed a *Motion for Sanctions* (Motion).  In its Motion, State Farm alleged that the supreme court found that Mr. Gatlin had violated UCCCR 1.05A and that sanctions against Mr. Gatlin were appropriate under UCCCR 1.05A.  In addition, State Farm included in its Motion a request to dismiss the Amended Complaint.  Responses to the Motion were filed by Mr. Gatlin who vigorously challenged State Farm's characterization of the supreme court's Writ.

---

[7]*Joseph Savan Gatlin, III's Response to State Farm's Motion for Summary Judgment*, Exhibit B, *Petition for Writ of Mandamus and for Stay* (#14-2)*,* Adversary  No. 12-00075EE, Dkt. No. 14, November 15, 2012.

[8]*State Farm's Motion for Summary Judgment*, Exhibit M, *Order* (#8-13), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

After considering the pleadings and oral argument of the parties, Judge Yerger signed a *Memorandum Opinion and Order*[9] (1st Sanction Order) on June 24, 2009. In the 1st Sanction Order, Judge Yerger dismissed the Amended Complaint "because the Plaintiff's *(sic)* Amended Complaint was null and void, pursuant to the mandate of the Mississippi Supreme Court, and due to the Plaintiff's failure to serve process on the Defendants after the separate filing of the Amended Complaint."[10]

As to the request for sanctions against Mr. Gatlin, Judge Yerger found in the 1st Sanction Order that:

> Plaintiffs' counsel attempted to manipulate or defeat the purpose of UCCCR 1.05A, which requires random assignment of judges, by filing an Amended Complaint in Cause No. 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. The Court further finds that [State Farm is] entitled to sanctions, against Plaintiffs' counsel, in the amount of reasonable fees and expenses incurred relating to the proper severed docketing of this case in compliance with the Mississippi Supreme Court mandate.[11]

Judge Yerger ruled that sanctions of reasonable attorney fees and expenses would be awarded to State Farm by separate order of the court. The amount of the sanctions would be based upon documentation submitted by State Farm detailing its attorney fees and related expenses.

On July 1, 2009, State Farm provided its *Itemization of Fees and Expenses* [12] to Judge Yerger. Again, a plethora of pleadings was filed by State Farm and Mr. Gatlin regarding the amount

---

[9]*State Farm's Motion for Summary Judgment*, Exhibit P, *Memorandum Opinion and Order* (#8-16), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[10]*Id.* at 2.

[11]*Id.*

[12]*State Farm's Motion for Summary Judgment*, Exhibit Q, *Itemization of Fees and Expenses* (#8-17), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

of the sanctions.  After conducting hearings on the matter and considering all of the pleadings filed,

Judge Yerger issued an *Order* (2nd Sanction Order) on December 15, 2009, in which he established

the amount of the sanctions to be awarded to State Farm.  Judge Yerger ordered sanctions in the

amount of $67,485.59 against Mr. Gatlin.

      Mr. Gatlin appealed both the 1st Sanction Order and the 2nd Sanction Order to the supreme

court.  Following the dismissal of the two appeals, Judge Yerger entered a *Final Judgment*[13] on

February 16, 2012, in the amount of $67,485.59 (Sanctions Award) plus the legal rate of interest

beginning on December 16, 2009, until paid, against Mr. Gatlin.

      On May 17, 2012, Mr. Gatlin (hereinafter, Debtor) filed a petition for relief under Chapter

7 of the United States Bankruptcy Code.  On June 28, 2012, the above-styled adversary proceeding

was commenced with the filing of State Farm's *Adversary Complaint to Determine Dischargeability*

*of Debt* (#1) (Adversary Complaint).  In its Adversary Complaint, State Farm alleges that the

Sanctions Award in the amount of $67,485.59 comprise a debt that is nondischargeable pursuant to

11 U.S.C. § 523(a)(6),[14] "and/or within the parameters of a fraud, which may be excepted from

discharge, after notice and hearing, under 11 U.S.C. § 523(c)."[15]

      The Debtor filed a *Response to Complaint to Determine Dischargeability of Debt* (#5) on

July 30, 2012.  Thereafter, the Court entered a *Scheduling Order* (#6) on July 31, 2012.

---

[13]*State Farm's Motion for Summary Judgment*, Exhibit DD, *Final Judgment* (#8-30), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[14]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[15]*Adversary Complaint to Determine Dischargeability of Debt*, Adversary No. 12-00075EE, Dkt. No. 1, June 18, 2012, p. 3.

6

On September 25, 2012, State Farm filed the Summary Judgment Motion and a brief in support of its Summary Judgment Motion. In its Summary Judgment Motion, State Farm alleges that collateral estoppel applies to prevent relitigation of the Sanctions Award, and therefore, it is entitled to a judgment as a matter of law that the Sanctions Award is nondischargeable pursuant to § 523(a)(6). On November 15, 2012, the Debtor filed *Joseph Savan Gatlin, III's Response to State Farm's Motion for Summary Judgment* (#14) (Response) and a brief in support of his Response. In his Response, the Debtor alleges that summary judgment should be denied as numerous disputes as to material facts exist.

## CONCLUSIONS OF LAW

### I. Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(I).

### II. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[16] as amended effective December 1, 2010,[17] provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the court does not weigh the

---

[16]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[17]The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986)." *Newton v. Bank of America (In re Greene),* 2011 WL 864971, at *4 (Bankr. E.D. Tenn. March 11, 2011).

"The moving party bears the burden of showing the . . . court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)." *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003).

Once a motion for summary judgment is pled and properly supported, the burden shifts to the non-moving party to prove that there are genuine disputes as to material facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."[18]  Or the non-moving party may "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute."[19]  When proving that there are genuine disputes as to material facts, the non-moving party cannot rely "solely on allegations or denials contained in the pleadings or 'mere scintilla of evidence in support of the nonmoving party will not be sufficient.' *Nye v. CSX Transp., Inc.,* 437 F. 3d 556, 563 (6th Cir. 2006); *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 106 S. Ct. 1348, 1356 (1986)." *Newton,* 2011 WL 864971, at *4.  "[T]he nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir.

---

[18]Fed. R. Bankr. P. 7056(c)(1)(A).

[19]Fed. R. Bankr. P. 7056(c)(1)(B).

8

2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 106 S. Ct. at 1356 (citations omitted).

When considering a motion for summary judgment, the court must view the pleadings and evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, and the motion should be granted only where there is no genuine issue of material fact. *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), *aff'd*, 816 F.2d 675 (5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th Cir. 1984)); *See also Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986).  The court must decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2502, 2512, 91 L. Ed. 2d 202 (1986).

## II. Application to the Case at Bar

### A. Section 523(a)(6)

Under § 523(a)(6), a debt is excepted from discharge as follows:

**11 U.S.C. § 523.  Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

9

In order to prevail under § 523(a)(6), a party must prove that the debt is nondischargeable by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

In *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998), the United States Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." Further, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. Recently, the Supreme Court reiterated the policy considerations for confining § 523(a)(6) to circumstances that benefit "a typically more honest creditor." *Bullock v. BankChampaign,* 2013 WL 1942393, at *6 (May 13, 2013).

In *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598 (5th Cir. 1998), the Court of Appeals for the Fifth Circuit extended *Kawaauhau's* reasoning. The court in *Miller* refined the definition of willful and malicious and held that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful. . .injury' in § 536(a)(6)." *Miller*, 156 F.3d at 603. The *Miller* court rejected the definition of *malicious* to mean an act without just cause or excuse. Rather, the Fifth Circuit adopted an "implied malice standard" and held that *malicious* was an act done with the "actual intent to cause injury." *Id.* at 606 (citation omitted).

Several years later, the Fifth Circuit further addressed and refined its definition for willful and malicious in § 523(a)(6) in *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504 (5th Cir. 2003):

10

> The test for willful and malicious injury under Section 523(a)(6), thus, is condensed into a single inquiry of whether there exists "either an objective substantial certainty of harm or a subjective motive to cause harm" on the part of the debtor. *[Miller,* 156 F.3d at 606]. *See also Texas v. Walker,* 142 F.3d 813, 823 (5th Cir.1998) (stating "'for willfulness and malice to prevent discharge under Section 523(a)(6), the debtor must have intended the actual injury that resulted.' . . . 'Intent to injure may be established by showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'")(citing *In re Delaney,* 97 F.3d 800, 802 (5th Cir.1996)).

*In re Williams*, 337 F.3d at 509.

Consequently, under Fifth Circuit jurisprudence, an injury is *willful and malicious* when there is "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606.

### B.  Issue Preclusion/Collateral Estoppel[20]  in Bankruptcy Courts

In its Adversary Complaint and Summary Judgment Motion, State Farm alleges that the Sanctions Award of $67,485.59 awarded in state court is entitled to preclusive effect in establishing the grounds for nondischargeability pursuant to § 523(a)(6).[21]  Before deciding if a genuine issue exists at to whether the Sanctions Award falls within the exception to discharge, the Court will consider the preclusive effect, if any, of the Sanctions Award.

---

[20]Issue preclusion is also known by the term collateral estoppel.  The *Restatement (Second) of Judgments* replaced the terms *res judicata* and *collateral estoppel* with the clearer terms of *issue preclusion* and *claim preclusion.*  Since the adoption of the *Restatement (Second) of Judgments,* the United States Supreme Court has "consistently urged courts to use the terms *claim preclusion* and *issue preclusion*, rather than *res judicata* and *collateral estoppel,* as they apply *Restatement (Second)* analysis." *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr. L.J. 839, 843 (Fall 2005) (footnotes omitted).  In this Opinion, the Court will use the term issue preclusion rather than collateral estoppel.

[21]In its Adversary Complaint, State Farm also cites § 523(c) as a basis for declaring the Sanctions Award nondischargeable.  However, State Farm's Summary Judgment Motion only requests a nondischargeable judgment pursuant to § 523(a)(6).  Therefore, the Court will not address the relevance of § 523(c).

As noted, the *Restatement (Second) of Judgments* replaced the terms *res judicata* and *collateral estoppel* with the clearer terms of *issue preclusion* and *claim preclusion.* "The term *res judicata* was redirected to become a generic concept as *rules of res judicata* and *principles of res judicata,* while the specific preclusion doctrines were described by the more analytically-helpful terms, *issue preclusion* and *claim preclusion,* which, . . . 'at times seems to contribute to greater clarity of thought.'" *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 Am. Bankr. L.J. 839, 843 (Fall 2005) (footnote omitted).

The primary difference "between *claim* and *issue preclusion* is that *claim preclusion* operates through the doctrines of *merger* and *bar* to prevent litigation of issues that never have been litigated, as well as those that have actually been litigated, while *issue preclusion* bars relitigation only of issues that have actually been litigated." *Id.* at 841.

"*Issue preclusion* bars relitigation of issues that have been actually litigated. . . .The most frequent application of *issue preclusion* in bankruptcy cases arises in connection with contests over the dischargeability of a particular debt." *Id.* at 852-53. "Although bankruptcy courts have exclusive jurisdiction to determine the dischargeability of debts under the Bankruptcy Code, it is well established that issue preclusion, also called collateral estoppel, may apply in bankruptcy dischargeability proceedings. *See generally Grogan v. Garner,* 498 U.S. 279, 284, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *Schwager v. Fallas (In re Schwager),* 121 F.3d 177, 181 (5th Cir. 1997)." *Cornwell v. Loesch,* 2004 WL 614848, at *2 (N.D. Tex. Feb. 27, 2004). "[I]n only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel[/issue preclusion] and thereby ignore Congress' mandate to provide plenary review of dischargeability issues." *Dennis v. Dennis (In re Dennis),* 25 F.3d 274, 278 (5th Cir. 1994), *cert. denied,* 513 U.S. 1081, 115 S. Ct.

732, 130 L. Ed. 2d. 636 (1995).

In *Grogan,* the Supreme Court held that the doctrine of issue preclusion may apply in § 523(a) litigation in the bankruptcy court in order to prevent the relitigation of "those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. *See* Restatement (Second) of Judgments § 27 (1982)." *Grogan*, 498 U.S. at 284 (footnote omitted). For the purpose of nondischargeability, issue preclusion applies in bankruptcy court only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *In re Dennis,* 25 F.3d at 278.

When considering the preclusive effect of a state court judgment, a federal court must look to the law of the state where the judgment was entered and give whatever preclusive effect the judgment would have under that state's law. *Shimon v. Sewerage & Water Bd. of New Orleans,* 565 F.3d 195, 199 (5th Cir. 2009); *Chizk v. Ramon (In re Ramon),* 433 B.R. 571, 583 (Bankr. N.D. Tex. 2010) (preclusive effect of a judgment entered in Mississippi).

The Supreme Court of Mississippi has held that collateral estoppel/issue preclusion "precludes parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity. . . . Collateral estoppel[/issue preclusion] precludes revisiting *issues* previously decided, and nothing in the rule limits its coverage to issues of fact." *State ex rel. Moore v. Molpus,* 578 So. 2d 624, 640 (Miss. 1991) (citation omitted); *see also M.A.S. v. Miss. Dept. of Human Services,* 842 So. 2d 527, 529 (Miss. 2003).

The Fifth Circuit has held that under Mississippi law, collateral estoppel/issue preclusion

13

precludes the parties from "relitigating a specific issue which was: actually litigated in the former action; determined by the former action; and, essential to the judgment in the former action." *American Cas. Co. v. United Southern Bank,* 950 F.2d 250, 253 (5th Cir. 1992) (citations omitted).

In a case from the Northern District of Texas, the bankruptcy court addressed the preclusive effect of a judgment entered in Mississippi in the context of dischargeability. The Texas bankruptcy court found that "[i]n Mississippi, a party will be barred by collateral estoppel from relitigating an issue only if the issue was 'actually litigated in the former action; determined by the former action; and, essential to the judgment in the former action.'" *In re Ramon,* 433 B.R. at 583 (quoting *American Casualty Co. v. United Southern Bank,* 950 F.2d 250, 253 (5th Cir.1992)).

In order to assess the nondischargeability claim, the Court must first determine if the Sanctions Award is entitled to preclusive effect as to § 523(a)(6). If issue preclusion applies, then the Court must accept any factual findings of the state court underlying the Sanctions Award and apply those findings to the elements of State Farm's nondischargeability claim.

### C. Application of Issue Preclusion Standards

In the case at bar, the Court finds that under Mississippi law, issue preclusion applies because the issue of sanctions was (1) actually litigated in state court; (2) the state court made determinations regarding the issue of sanctions; and (3) the state court's findings were essential to the award of sanctions.

"The requirement that an issue be "actually litigated" for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 272 (5th Cir. 2005) (citation omitted). Both the 1st Sanction Order and the 2nd Sanction Order clearly establish that the issue of

14

sanctions was actually litigated: it was raised by the same parties in this adversary proceeding, contested by the parties, submitted to Judge Yerger for adjudication, and ruled upon by Judge Yerger.

In the 1st Sanction Order, Judge Yerger states that: "The Court has considered the Motions, the Plaintiffs' Responses, Defendant's Replies and has heard oral argument of counsel."[22]  In the 2nd Sanction Order, Judge Yerger states that in determining the dollar amount of the sanctions "[t]he Court has considered the Motion, the Plaintiffs' Response, Defendants' Reply and has conducted hearings on the issues presented."[23]   Consequently, the Court finds that issue preclusion clearly applies to bar relitigation of the factual foundation for the issuance of sanctions.  The Court's task in reaching this result was made more easy by the undisputed fact that the Sanctions Award was preceded by a hearing in state court.

### D.  Application of § 523(a)(6) Standards

Having found that issue preclusion applies, the Court must now determine if the elements under § 523(a)(6) were addressed in state court.  This analysis is necessary because issue preclusion will not necessarily apply to bar a debtor from litigating the dischargeability of an award of sanctions.

Thus, "[c]ollateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Dennis v. Dennis (In re Dennis),* 25 F.3d 274,

---

[22]*State Farm's Motion for Summary Judgment*, Exhibit P, *Memorandum Opinion and Order* (#8-16), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[23]*State Farm's Motion for Summary Judgment*, Exhibit AA, *Order* (#8-27), pp 1, Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

278 (5th Cir.1994). Therefore, the state court's findings must satisfy the elements of the "willful and malicious injury" requirement.

*In re Keaty*, 397 F.3d at 271.

In the analogous case of *In re Keaty*, Byrd hired Robert Keaty, Thomas Keaty and their law firm (Keatys) to represent her son in a personal injury claim in state court. After reaching a settlement with one defendant and after losing at trial against the other defendant, the Keatys filed a notice of appeal on Byrd's behalf. In the meantime, a dispute arose between Byrd and the Keatys regarding payment of the Keatys' attorneys' fees. Byrd and the Keatys settled their dispute. However, Byrd eventually fired the Keatys and hired another attorney, Raspanti, to handle the appeal. The Keatys intervened in the lawsuit seeking additional attorney fees in the event the appeal was successful. The appellate court reversed and remanded the case. The suit was ultimately settled, and Raspanti was awarded attorney fees.

After the state court dismissed their claim for additional attorney fees, the Keatys then filed several suits against Raspanti seeking a portion of the attorney fees he was awarded. The matters traversed the courts and appellate courts in Louisiana. Eventually judgment was entered in favor of Raspanti, and all actions filed by the Keatys against Raspanti were dismissed. The state court issued an award of sanctions against the Keatys because "'the entire proceedings by the Keatys against Raspanti was *knowingly* without foundation, crafted for *purposes of harassment* and carried out in a manner designed to *deliberately* prolong the proceedings needlessly. *[Keaty v. Raspanti,* 781 So.2d 607, 612 (La.Ct.App. 2001)] (emphasis added).'" *In re Keaty*, 397 F.3d at 273-74. The Keatys were sanctioned under a Louisiana law regarding the filing of pleadings "for any improper purpose." La. Code Civ. Pro. Ann. Art. 863 (1984).

During the ongoing appellate proceedings in Louisiana state court, Robert Keaty and his wife filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, Raspanti filed an adversary proceeding[24] objecting to the dischargeability of the sanctions award pursuant to § 523(a)(6). The bankruptcy court ruled that the sanctions were dischargeable, and the district court affirmed. However, the Fifth Circuit reversed the district and bankruptcy courts and found that the sanctions were nondischargeable pursuant to § 523(a)(6).

The Fifth Circuit found that the sanctions issue was actually litigated in state court because: the sanctions were raised by Raspanti and contested by the Keatys; the issue of sanctions was submitted for determination to the trial judge and the state appellate court; and the state courts determined that sanctions were warranted.

The Fifth Circuit then examined the state court record and determined that Raspanti's claim for sanctions under Louisiana law encompassed the elements of a willful and malicious injury under § 523(a)(6). In examining the Louisiana statute and § 523(a)(6), the Fifth Circuit found:

> Both § 523(a)(6) and the Louisiana statute require an inquiry into whether Keaty acted either with an objective substantial certainty of injury (to cause unnecessary delay) or a subjective motive to cause injury (to harass or to increase the cost of litigation needlessly). In fact, the Louisiana appellate court issued sanctions against Keaty for *intentionally* pursuing meritless litigation for the purpose of harassment and delay. Thus, we conclude that Raspanti's claim for sanctions under Louisiana law encompasses the elements of the willful and malicious injury requirement under § 523(a)(6) of the Bankruptcy Code.

*In re Keaty*, 397 F.3d at 273.

As in *Keaty,* and as previously found by the Court in the case at bar, the Sanctions Award was actually litigated and is entitled to preclusive effect. Therefore, the Court must now look to see

---

[24]While both of the Keatys filed bankruptcy, the adversary proceeding was only filed against the husband, Robert Keaty.

if the rulings of the Mississippi state courts encompassed the elements of a willful and malicious injury under § 523(a)(6).

To recap, the chain of events that led to the eventual Sanctions Award began in 2002 when the Debtor filed the initial complaint in the Circuit Court of Hinds County.[25]  State Farm made its first appearance in the Hinds County Litigation in January of 2003, when it filed a *Motion for Dismissal*[26] of the Hinds County Litigation.  Thereafter, the Hinds County Litigation continued for several years with various rulings by the circuit judge and various pleadings being filed by both sides.[27]

On December 18, 2006, State Farm filed its Petition with the Supreme Court of Mississippi. Among several grounds, State Farm requested that the supreme court grant its Petition because the Debtor had violated UCCCR 1.05A which dictates the random assignment of judges:  "Plaintiffs have delayed their action, increased the costs to the Courts, and have attempted to prejudice State Farm by denying it the right of a random assignment of judges by manipulation of the rules regarding amendments [Miss. R. of Civ. P. 15].[28]  Thereafter on February 7, 2007,  the supreme court issued the Writ and ordered that the matter be severed and returned to the clerk of court for random

---

[25]*State Farm's Motion for Summary Judgment*, Exhibit A, *Complaint Jury Trial Demanded* (#8-1), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[26]*State Farm's Motion for Summary Judgment*, Exhibit H, *Motion for Dismissal* (#8-8), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[27]*See State Farm's Motion for Summary Judgment*, Exhibits G, I, J, K, & L, Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[28]" *Joseph Savan Gatlin, III's Response to State Farm's Motion for Summary Judgment*, Exhibit B, *Petition for Writ of Mandamus and for Stay* (#14-2)*,* p. 13, Adversary No. 12-00075EE, Dkt. No. 14, November 15, 2012.

assignment as required by UCCCR 1.05A.[29]

On November 27, 2007, State Farm filed its Motion[30] requesting sanctions against the Debtor and dismissal of the underlying Amended Complaint for violation by the Debtor of UCCCR 1.05A.

UCCCR 1.05A provides:

> **A.** In multi-judge districts and courts, all civil cases shall be assigned immediately on the filing of the complaint by such method which shall insure that the assignment shall be random, that no discernable pattern of assignment exists, and that no person shall know to whom the case will be assigned until it has been assigned. If an attorney or party shall attempt to manipulate or defeat the purpose of this rule, the case shall be reassigned to the judge who would have otherwise received the assignment. . . .Sanctions, including costs and attorney's fees, may be imposed by that judge on reassignment. Such sanctions may also include suspension from practice in the court imposing them for not more than 30 days and referral to the Bar for further discipline.

UCCCR 1.05A.

In its Motion, State Farm alleges that as a result of the Debtor's violation of UCCCR 1.05A, it filed seven motions, attended three hearings, and filed the Petition before the supreme court.[31] After the Motion was filed, the following pleadings were filed by the parties before Judge Yerger issued the 1st Sanction Order (The following are attached as exhibits to the Summary Judgment Motion.  The Exhibit letters are listed after each pleading.):

1. *Reply in Support of Motion for Sanctions*[32] filed by State Farm (Exhibit W, #8-23);

---

[29]*State Farm's Motion for Summary Judgment*, Exhibit M, *Order* (#8-13),  Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[30]*State Farm's Motion for Summary Judgment*, Exhibit N, *Motion for Sanctions* (#8-14), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

[31]*Id.* at 2-3.

[32]This reply states that it is in response the Debtor's response to its Motion.  However, the record does not contain the Debtor's response.

2. *Affidavit of Philip W. Gaines* filed by State Farm (Exhibit O, #8-15);

3. *Plaintiffs' Response to Defendants' Proposed Order Regarding Sanctions and Dismissal* filed by the Debtor (Exhibit U, #8-21); and

4. *Corrected Rebuttal to Plaintiffs' Response to Defendants' Proposed Order Regarding Sanctions and Dismissal*[33] filed by State Farm (Exhibit X, #8-24).

The Court finds that these pleadings clearly demonstrate that prior to the entry of the 1st Sanction Order, the Debtor vigorously contested and defended the Motion. Judge Yerger states in his 1st Sanction Order that he not only considered the pleadings, but he also considered oral argument by the parties.

After the Motion was filed and after the entry of the 1st Sanctions Order, the following pleadings were filed by the parties before Judge Yerger issued the 2nd Sanction Order (The following are attached as exhibits to the Summary Judgment Motion. The Exhibit letters are listed after each pleading.):

1. *Itemization of Fees and Expenses* filed by State Farm (Exhibit Q, #8-17);

2. *Defendant's (sic) Response to Plaintiffs' Motion for Reconsideration and for Additional Findings of Fact*[34] filed by State Farm (Exhibit Y, #8-25);

3. *Motion to Strike State Farm's Submission of Attorneys Fees and for an Order Denying Sanctions* filed by the Debtor (Exhibit V, #8-22);

4. *Plaintiffs Reply in Support of its Motion to Strike State Farm's Submission of Attorneys' Fees and for an Order Denying Sanctions*[35] filed by the Debtor (Exhibit R, #8-18);

5. *Joel S. Gatlin's Response to Requested Amount of Sanctions* filed by the Debtor (Exhibit S, #8-19);

---

[33]State Farm's initial rebuttal was not submitted to the Court.

[34]The Debtor's motion for reconsideration was not submitted to the Court.

[35]State Farm's response was not submitted to the Court.

20

6. *Defendants' Rebuttal Reply on Submitted Amount of Sanctions* filed by State Farm (Exhibit Z, #8-26); and

7. *Plaintiff's Reply to "Defendants' Rebuttal Reply on Submitted Amount of Sanctions"* filed by State Farm (Exhibit T, #8-20).

Judge Yerger subsequently issued the 2nd Sanction Order.

In granting the Motion and denying Mr. Gatlin's motion to strike and motion for reconsideration, Judge Yerger's 2nd Sanction Order provides in pertinent part:

> BEFORE THE COURT is the Motion for Sanctions, filed by the Defendants, [State Farm]. The Court has considered the Motion, the Plaintiffs' Response, Defendants' Reply and has conducted hearings on the issues presented. The Court has also considered sworn Affidavits filed by counsel for Defendants, offered in support of Defendants' Motion for Sanctions, and the Itemization of Fees and Expenses, submitted under seal. Being fully advised in the premises, the Court finds and opines as follows:
>
> . . . .
>
> The Mississippi Supreme Court issued an Order on February 7, 2007, granting that [Petition] and ordered that the Amended Complaint "shall be severed and returned to the Clerk of the trial court for random assignment pursuant to UCCCR 1.05A.
>
> . . . .
>
> Uniform Circuit and County Court Rule 1.05A specifically provides that sanctions, including costs and attorney's fees, may be imposed under circumstances where a violation of that rule has occurred. Based on the February 7, 2007, Order of the Mississippi Supreme Court, this Court previously found that Plaintiffs' counsel attempted to manipulate or defeat the purpose of UCCCR 1.05A, which requires random assignment of judges, by filing an Amended Complaint in Cause No. 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. This Court also found that [State Farm is] entitled to sanctions, against Plaintiffs' counsel, in the amount of necessary and reasonable fees and expenses incurred relating to the violation of UCCR *(sic)* 1.05A. The conduct, in violation of UCCCR 1.05A, displayed by Plaintiffs' counsel, proximately caused damages to the Defendants, namely substantial legal fees and expenses incurred by the State Farm Defendants. As a result, compensation, in the form of sanctions, is warranted.
>
> This Court has considered many factors, including the ruling by the Mississippi Supreme Court on the violation of UCCCR Rule 1.05A, the pleadings, briefs,

21

affidavits, argument, and the totality of the circumstances involving the issue of sanctions. . . .The Mississippi Supreme Court has held "that the primary purposes behind the rules of discipline are 'to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct.'" *Rogers v. The Mississippi Bar,* 731 So.2d 1158, 1171 (Miss. 1999) (quoting *The Mississippi Bar v. Felton,* 699 So.2d 949, 951 (Miss. 1997)). . . .After due consideration, this Court finds that Joel Gatlin, counsel for the Plaintiffs, should be sanctioned in the full amount of reasonable expenses and fees incurred by the State Farm Defendants, as a result of Plaintiff counsel's improper forum shopping, in the amount of $67,485.59.

The Court is of the opinion that the factual circumstances of this case, involving vigorously contested issues, *which evolved over a period of approximately four years*, provide for no lesser alternatives. . . .[I]t is the Court's opinion that the award is necessary, under the factual circumstances of this case, to deter further similar misconduct and to compensate the parties that sustained the actual attorney's fees and costs, resulting from the rule violation.  Both the Plaintiffs and the Defendants engaged in extensive adversarial actions, in support of their respective positions on this issue, which required a substantial amount of time and expense.  In addition, counsel for the Plaintiffs had the opportunity to mitigate the damages.  Each side remained adamant in their respective positions.  Pursuant to the Supreme Court's finding that Plaintiffs' counsel did in fact violate UCCCR 1.05A, the Court is of the opinion that it has no alternative, except to award the Defendants the total amount of the reasonable attorneys' fees and expenses actually incurred.

*State Farm's Motion for Summary Judgment*, Exhibit AA, *Order* (#8-27), pp. 1-3, Adversary No.

12-00075EE, Dkt. No. 8, September 25, 2012.

As the Fifth Circuit found in *Keaty*, the Court finds that in reaching his decision to award sanctions against the Debtor, Judge Yerger's deliberations encompassed the elements of a *willful and malicious* injury as defined under § 523(a)(6).  Judge Yerger found that when the Debtor violated UCCCR 1.05A, the Debtor's actions created an objective substantial certainty of injury to State Farm and demonstrated a subjective motive to cause injury to State Farm by needlessly increasing the cost of litigation:   "The conduct, in violation of UCCCR 1.05A, displayed by Plaintiffs' counsel, proximately caused damages to the Defendants, namely substantial legal fees and expenses incurred

22

by the State Farm Defendants."[36]

In *Williams*, the Fifth Circuit found that in order for dischargeability to be denied under

§ 523(a)(6), "'the debtor must have intended the actual injury that resulted.' . . . 'Intent to injure may

be established by showing that the debtor intentionally took action that necessarily caused, or was

substantially certain to cause, the injury.' (citing *In re Delaney,* 97 F.3d 800, 802 (5th Cir. 1996))."

*In re Williams*, 337 F.3d at 509.  As pointed out by Judge Yerger in his 2nd Sanction Order, once

the supreme court ruled that UCCCR 1.05A had been violated, the Debtor had the opportunity to

mitigate the damages, but choose instead to vigorously contest the issues for over a four-year period.

The Debtor continued to litigate the issue of sanctions even after Judge Yerger had ruled that

sanctions were appropriate against the Debtor.  In a review of the pleadings filed after Judge Yerger

found that the Debtor had violated UCCCR 1.05A, the Debtor continued to argue that sanctions were

not warranted because he had not violated UCCCR 1.05A.  (*See* Exhibits R (8-18); S (8-19); T (8-

20); and V (8-22) to the Summary Judgment Motion.)

In addition, the Debtor appealed Judge Yerger's 1st Sanction Order (Supreme Court #2010-

TS-00275), and then in January of 2010, the Debtor appealed the 2nd Sanction Order (Supreme

Court #2010-M-00078).  It was almost a full year after the 1st Sanction Order was entered on June

25, 2009, before the Debtor "gave up the fight" and filed his *Motion for Voluntary Dismissal of*

*Appeal with Prejudice* with the supreme court.  The *Dismissal Notice* was entered by the clerk on

May 6, 2010.[37]

---

[36]*State Farm's Motion for Summary Judgment*, Exhibit AA, *Order* (#8-27), p. 2, Adversary No.
12-00075EE, Dkt. No. 8, September 25, 2012.

[37]*State Farm's Motion for Summary Judgment*, Exhibit BB (composite exhibit), *Order* (#8-28),
p. 6 of composite exhibit, Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

The Court finds that the Debtor's intent to injure State Farm within the meaning of § 523(a)(6) is established by the Debtor's conduct: the Debtor intentionally continued to contest the ruling by the supreme court that UCCCR 1.05A had been violated; the Debtor intentionally continued to deny that he had violated UCCCR 1.05A after Judge Yerger had specifically found otherwise in the 1st Sanction Order; and the Debtor intentionally continued to contest the Sanctions Award for another five months in his appeal of the 2nd Sanction Order.  The Court finds that these intentional acts by the Debtor meet the Fifth Circuit's definition of a *willful and malicious* injury under § 523(a)(6) because the Debtor's acts not only "necessarily caused" the injury to State Farm, but were also "substantially certain to cause"[38] the injury to State Farm.

In his Response, the Debtor states that "[h]e did not engage in misconduct by attempting to manipulate or defeat the random assignment of judges."[39]  Similarly, in his brief in support of his Response, the Debtor states that the facts regarding the filing of the Amended Complaint are genuine issues of material fact that are in dispute, and therefore, summary judgment should not be granted. These contentions by the Debtor demonstrate his continued efforts to dispute the Sanctions Award.

Both the 1st Sanction Order and the 2nd Sanction Order are final orders.  As noted above, in the 1st Sanction Order, Judge Yerger followed the mandate of the supreme court and found that in filing the Amended Complaint, the Debtor had violated UCCCR 1.05A and was attempting to manipulate the random assignment of judges.[40]  Judge Yerger then determined the dollar amount of

---

[38]*In re Williams,* 337 F.3d at 509.

[39]*Joseph Savan Gatlin, III's Response to State Farm's Motion for Summary Judgment*, Adversary No. 12-00075EE, Dkt. No. 14, p.2, November 15, 2012.

[40]*State Farm's Motion for Summary Judgment*, Exhibit P, p. 2, *Memorandum Opinion and Order* (#8-16), Adversary No. 12-00075EE, Dkt. No. 8, September 25, 2012.

the sanctions and issued the 2nd Sanction Order.

The Sanction Award, memorialized in the *Final Judgment* signed on February 16, 2012, is what State Farm is attempting to have declared nondischargeable pursuant to § 523(a)(6). Whether State Farm has met its summary judgment burden as to the dischargeability issue through the application of the doctrine of issue preclusion is the only issue before the Court. The question as to whether the Debtor violated UCCCR 1.05A is not properly before the Court as that issue was fully and finally adjudicated by the Supreme Court of Mississippi and Judge Yerger.

The Debtor also alleges that the Sanction Award does not meet the standards for nondischargeability pursuant to § 523(a)(7). However, State Farm did not plead § 523(a)(7) as a ground for relief. Since the Court has already found that the Sanctions Award is nondischargeable under § 523(a)(6), it is unnecessary for the Court to address § 523(a)(7).

Consequently, the Court finds that the state court findings, to which issue preclusion applies, satisfy the elements of § 523(a)(6) to show that the Debtor acted willfully and maliciously to injure State Farm.

### E. Sufficiency of the Record

The Court notes that the record submitted to the Court did not include transcripts of hearings held before Judge Yerger. While having the hearing transcripts would have been helpful, the Court finds that their absence is not fatal. As the *Ramon* court found:

> While the facts supporting the first court's findings must be discernible from that court's record, it is not necessary for litigants to present the prior court's entire trial record, including transcripts. *Sheerin v. Davis (In re Davis),* 3 F.3d 113, 115 (5th Cir.1993). However, enough of the prior court's record must be presented to the bankruptcy court for it to make a determination that a trial or hearing was conducted at which the plaintiff met his or her burden of proof. *Pancake v. Reliance Ins. Co. (In re Pancake),* 106 F.3d 1242 (5th Cir.1997).

25

*In re Ramon*, 433 B.R. at 584 (citation omitted).

The Court finds that enough of the state court record was submitted to enable it to make a determination that the issue of sanctions was actually litigated because the Debtor vigorously defended State Farm's request for sanctions in both the circuit court and the supreme court. Further, the record is sufficient to allow the Court to find that State Farm's claim for sanctions under Mississippi law "encompasse[d] the elements of the willful and malicious injury requirement under § 523(a)(6) of the Bankruptcy Code."

### Conclusion

The question of whether the Debtor attempted to manipulate or defeat the purpose of UCCCR 1.01A when the Debtor filed the Amended Complaint against State Farm was adjudicated by both the Supreme Court of Mississippi and the Circuit Court of the First Judicial District of Hinds County, Mississippi. The only issue before this Court is whether summary judgment is appropriate to declare the debt owed State Farm, as set forth in the Sanctions Award, and memorialized in the *Final Judgment* signed on February 16, 2012, is nondischargeable pursuant to § 523(a)(6).

In order to defeat a motion for summary judgment, the Debtor had to "submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action." *Malacara,* 353 F.3d at 404. The Debtor has not shown the existence of any "disputes over facts that might affect the outcome of the suit under the governing law [in order to] properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Applying these summary judgment standards as established by the United States Supreme Court, the Court finds that the Debtor has not shown a genuine dispute as to any material fact which would allow a "reasonable jury [to] return a verdict for the non-moving party." *Id.*

The issue of sanctions was actually litigated in state court, and State Farm has met the elements necessary for issue preclusion to prohibit the relitigation of facts decided in the Hinds County Litigation.  State Farm has shown by a preponderance of the evidence that the Debtor "'intentionally took action that necessarily caused, or was substantially certain to cause, the injury'"[41] to State Farm.  Therefore, State Farm is entitled to a nondischargeable judgment pursuant to § 523(a)(6) as a matter of law.

A separate judgment consistent with this opinion will be entered in accordance with Rule 7054 of the Federal Rules of Bankruptcy Procedure.

_Edward Ellington_
Edward Ellington
United States Bankruptcy Judge
Dated: May 22, 2013

---

[41]*In re Williams*, 337 F.3d at 509 (citation omitted).